Good morning. May it please the court, my name is Randy Tanner and together with Matthew Hayhurst, we represent the petitioner in this matter, Mr. Candiz Rahimzadeh, who joins us in the court today. This morning we are asking the court to remand this matter with instructions for the IJ, the immigration judge, to apply the correct legal standards under Ornel Chavez. We ask this for two reasons. There are two critical facts that no one, including the government, disputes here. Mr. Rahimzadeh offered undisputed and credible evidence that he was severely beaten, abducted, held at knife point, held at gunpoint, and most importantly here, threatened with death if he reported the incidents. Second, the IJ denied Mr. Rahimzadeh's claim for two reasons. At page 60 of the record, the IJ notes, Mr. Rahimzadeh never attempted to report instances of abuse or harassment in the past, and the Dutch country report suggests that if he had, the Dutch government would be willing to help. These are the same two reasons that this court found to be wholly inadequate under Ornel Chavez. In terms of the reporting requirement, to be eligible for asylum and withholding or removal, applicants must indeed show that persecution is experienced at the hands of the government or at the hands of non-state actors who the government is unable or willing to control. When persecution at the hands of private actors is in question, courts consider reporting. But under Ornel Chavez, applicants do not have to show they reported the persecution, and if doing so would be either futile or would result in further abuse. And here, Mr. Rahimzadeh offered credible testimony that Muslim extremists promised to kill him and members of his family if he reported the persecution to Dutch authorities. And under Ornel Chavez, the IJ was required to accept that testimony and all reasonable inferences as true. And in Ornel Chavez, the court concluded that it was reasonably inferable that it would have been futile for the applicant there to have reported those incidents. But here, nonetheless, the immigration judge denied Mr. Rahimzadeh's application for asylum and withholding or removal because he failed to report the persecution. At page 60 of the record, quote, the IJ disagreed with Mr. Rahimzadeh's argument that he did not have to show that he reported the incidents in which he was harmed to government authorities in order to establish past persecution. This is directly counter to this court's holding in Ornel Chavez. And on that basis alone, this matter should be remanded to the board for application of the proper legal standard. Similar to Ornel Chavez. The IJ thought that Ornel Chavez was distinguishable. I guess because, although he doesn't explain this very well, but I suppose what he was saying was because the Dutch government, had he asked them, might have been able to protect them from the further abuse of the private authorities as well. In other words, in Ornel Chavez, I think it was the notion was that the police were sort of in cahoots so that it wouldn't have done any good to complain to them. But here, even with regard to the further abuse, it might have been work to complain to the Dutch government. That's correct, Your Honor. Ornel Chavez is distinguishable, at least on the facts from the case here. But it's not distinguishable on the principles. And in Ornel Chavez, what was in question was the futility prong. And here it's the further abuse prong. But requiring Mr. Rahimzadeh here to report these incidents of further abuse is merely asking him to test his life and the lives of his family on the Dutch government's ability to control that. And we do agree that it's an important question whether the Dutch government was able or willing to control Mr. Rahimzadeh's persecutors. Well, let me ask this question. I'm not sure I agree with your reading of Ornel's case, but assuming I do, we're still left with the question in this case, right? You know, was the Dutch government unwilling or unable to control these Muslim extremists? Now, first of all, to me it's contradictory to say, well, how can you say, you know, they were unable, unwilling to control something they didn't even know about? That's number one. But number two, getting past that, how should we make the decision of whether or not substantial as the evidence supports the BIA's decision that no, the Dutch government was not unable and unwilling to control? How do we address that? Your Honor, I'll respond to that latter question, and Ornel Chavez provides the answer to that. And that's not a question that this Court has to answer. Under Ornel Chavez, where the Board of Immigration Appeals applies the wrong standard, and this is a quote from Ornel Chavez, to an applicant's claim the appropriate relief from this Court is remand for reconsideration under the correct standard, not an independent review of the evidence. So this Court — I'm sorry, what would be the remand purpose? The BIA or the IJ would say, look to the evidence that they did look to, which is that the Dutch government is generally capable. As I understand your argument, he was intimidated by his attackers not to report it. Are you suggesting that the rule is, therefore, if someone is intimidated by the attackers and doesn't report it, then that automatically means that they can't protect him? Not at all, Your Honor. What — What would be different? Well, the rule that Ornel Chavez provides is that if there are indications of further abuse if an applicant would report the persecution, then the question of whether the applicant reported doesn't play into the analysis of whether the government was unable or willing to control. And so under Ornel Chavez, the remedy that we're asking for here is remand to the Board with remand instructions to the IJ to apply the correct legal standard. To ignore the fact that he didn't report and then look to other instances of the Dutch government's ability to protect people against these kinds of things? That's correct, Your Honor. And what would they look to, country reports? Yes, Your Honor. Country reports, though, only play a secondary role. I understand that, Counselor.  Because basically the principle you're saying here is that, for example, if somebody is attacked and persecuted here in the United States, and they say if you go to the police, we'll kill your entire family, and he doesn't report it, you would draw the conclusion from that that the government would have to prove that had he reported it, they would be able to control. But the fact that it's not reported, obviously, they don't take any action. So I'm trying to understand what the principle is you're trying to apply to the Dutch here. Your Honor, the principle that we're trying to apply here is that reporting does not even figure into the analysis. Well, okay, but how did it? Okay, so you think that all they relied on was the fact that he didn't report it and there was no other analysis? Your Honor, that's precisely correct. The IJ stated that there were two considerations here, the reporting requirement and the background country reports. But the background country reports only play a secondary role in this case. Secondary to what? Yes, secondary to what? Secondary to the applicant's credible testimony. I know, but, Counselor, you're begging the question. The question is, all right, we just heard in the prior case the gentleman went to the police and they didn't do anything about it. Okay, so you can say whatever the country reports may say, we have a case where the individual went to them and they wouldn't report. Now you have a situation where the country reports indicate that the Dutch, just like our country, are able to go after people, but they didn't in this case because they were never given the chance. So secondary to what? What else is there to look to? If you can't look to the incident to establish willingness or ability, then what do you look to? Your Honor, the incident, the IJ can look to the incident to establish that. What? What is he going to find out about the police? Well, relying on the applicant's credible testimony here. That he didn't report it. He did report it. And moreover, he was threatened, but that's not unusual. In fact, it's implicit, it seems to me. I mean, if you bought into this, whenever somebody murders you, you're in some fear that if you go to the police, they're going to go after you, right? So the question still ultimately is whether the police could protect you not only from the primary incident, but from the retaliation, right? That's correct, Your Honor. And so what does his credible evidence have to do with that? In other words, he credibly said that somebody, that they threatened him, but he didn't credibly say that they could have succeeded in hurting him even if the police went after them because he couldn't have said that. That's correct, Your Honor. So the IJ does have to look to background country reports. It does play a role. Again, it's not intended to assert, though, the credible testimony of the applicant. What credible testimony are you talking about here specifically? A credible testimony that he received, that he was persecuted, that indeed he was persecuted, and he has faced this. But that doesn't tell you anything about whether the government would be able to protect him. Right. See, that's taken as a given in these situations that he is persecuted. The question is, in light of that persecution, can you hold the government responsible for that? And it seems to me it's very difficult if they don't know about it. And you say, well, you know, the victim doesn't have to report it. Then how is the government supposed to react? Your Honor, I see that I'm running out of time. There is credible evidence, apart from Mr. Rahim's testimony, or there is evidence at a minimum in the record suggesting that the Dutch government has been or has had a difficult time to control this type of persecution against Muslim-turned-Christian, Muslims-turned-Christian. But that analysis is proper for the immigration judge here, and not this court. This court does not have to examine with substantial evidence that question. Since the court or since the IG applied the wrong legal standard, it should be removed. Is there any case in which the further abuse prong was determinative as opposed to just cited? Your Honor, in the matter of essay, which is cited in the brief, there was an instance of further abuse where the Board of Immigration Appeals recognized that the applicant there did not have to report persecution because of the threat of further abuse. Now, that was not determinative of the issue of whether the government was unable or unwilling to control the persecution, but that's because it's not intended to be. It's simply the reporting question simply comes into play to say that an applicant does not have to show that he reported incidents of persecution at the hand of private actors, if doing so would have resulted in further abuse. Can I just sum up your argument as I understand it? You're suggesting that the error that the I.J. made was not to have undertaken a more comprehensive analysis of the ability and willingness of the Dutch police because he somehow screened that out or changed that obligation because he held against Mr. Ramzada the failure to report? That's true in part, Your Honor. So the two reasons we are arguing that the I.J.'s decision was inappropriate was because he made reporting a requirement. Got it. I got that. That's the first one, and then the background country report, or background country conditions element of that. All right. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Cori Farrell, and I am here today on behalf of the Attorney General. In this case, Mr. Ramzada, a Dutch citizen, is requesting asylum and withholding of removal from the Netherlands based on incidents perpetrated by private individuals. However, there is no suggestion that the harm he suffered was at the hands of the government, and he failed to establish that Dutch authorities are unable or unwilling to control the radical Muslims who targeted him. You may gather that we're aware of all of that so far. So on the unable and unwilling prong, there's no suggestion that Mr. Ramzada reported the incidents to the police. We're aware of that, too, if you've been sitting here for a while. And the immigration judge considered not only his failure to report, but also his reason for not reporting, and concluded that based on all of the evidence in the record, that there's evidence the Dutch government would be able to... What's the evidence that rebuts the notion that this person was brutally attacked and that the government, had he gone to them, was perfectly able and willing to protect him? The country reports show that the police in the Netherlands are generally effective and that the government takes firm action against groups espousing violence. The International Religious Freedom Report specifically states that the government protects the freedom of religion from abuse either by governmental or private actors. It's sort of a metaphysical problem. In this country, for example, there are many people who won't go to the police if they're involved in gang areas and so on, because the gang people are going to get to them before the government does. And similarly here, I mean, suppose he was told that they were going to retaliate against him if he went to the police, they're going to kill him, right? So he has to take the chance, essentially, is what you're saying, that the police will be able to protect him from that threat. That's correct, Your Honor. And he didn't present any evidence that the police wouldn't protect him from the threat. There's no evidence that others in the same situation were not protected by the police. And then in the Ornelio Chavez case, there was that history of police inaction or police participation in the persecution, and none of that is present in this case. We don't have any convincing evidence that the government would be unable or unwilling to protect him. Aside from this Ornelio Chavez case, do you know of any authority from the board or from any circuit about the obligation of a victim who's attacked by a nongovernmental person or group about any obligation to report? This court in, I believe it's Balboa, Balboa, which was discussed in Ornelio. Balboa, Balboa. Said that reporting... I was on that panel, yeah, Balboa, yeah. That reporting is a consideration when you're looking at the unable and unwilling to control. Is a consideration? Is a consideration, yes. And the board opposed the, we knew somewhat more about these people, and we knew that they did, in fact, kill people who went to the police. What I was trying to get at before and I'm trying to get at now is if it were a proven reason, would it be a valid reason? If it were, if there... If, in fact, these threats had a background of reality, that in other instances in which people had been attacked and had gone to the police, they'd been killed before the police could protect them, then would it be a valid reason? That's not what happened here, but I would assume that in cases where there is evidence that that would be a valid reason, that then the petitioner could show that the police were unable to protect if there was evidence that... So the bottom line is the risk's on him because maybe this has never happened before. Maybe these particular people have never made this threat before, so he couldn't put on any evidence as to whether they would actually succeed in doing it before the police would protect him, so he has to take the risk. And it was his burden to show that the police wouldn't protect him, and he presented nothing here. So there was no basis for him to believe that the police... He presented something, which is somebody told him if he goes to the police, they're going to kill him. Right, but as to what the police would do in that situation. But, you see, the problem is that the issue isn't only what the police would do, it's what these people would do. If these people were sufficiently organized and sufficiently violent and sufficiently crafty, they would be able to carry out their threat, presumably, no matter what the police did. Well, unless the police could step in and provide protection from him, and there's no evidence that the police could not do that here. He cited, I think, the Theo van Gogh murder, the filmmaker, didn't he, as part of his... I'm not sure, Your Honor, but I'm aware of that. He said a filmmaker was killed by Muslim extremists after making a film about Somalia. That's correct. Doesn't that indicate that they can't always protect against retributive actions by fanatical Muslims? I am not aware of the specific facts in that case. I don't know if the filmmaker was threatened previously or reported those threats to the police. So I'm not sure, Your Honor. Pretty famous case. All right. Do you have anything else? Is there no further questions?  Okay. Thank you. Of course, he denied the petition for you. Thank you. All right. I'll give you a minute in rebuttal. Thank you, Your Honor. Just two quick points, Your Honor. First, the respondents here have argued that there is no evidence that the government is unwilling to control the persecution against Muslim-turned-Christian. I would draw your attention to page 288 and 289 of the record, which Mr. Rahimzadeh did provide to the IJ, which documents the very case that you mentioned a moment ago involving the Dutch filmmaker. And you're absolutely right, Judge Pfister, that the testimony is somewhat ambiguous as to whether the IJ properly analyzed the background conditions, including that very case. And for that reason, we're asking for a remand also. Second, the government here in its brief is asking this court for an independent review of the record. But, again, we argue that that is an inappropriate analysis here and that the appropriate remedy is to remand this matter. But the IJ did say, the final sentence is, the respondent never attempted to report instances of abuse or harassment in the past, and the country report suggested if he had, the Dutch government would be willing to help. What more could he say? Your Honor, again, I argue that what the IJ did there was to place a primary role, based on the background country reports, first. He has a dual sentence, one A and B. That's correct, and those were the precise reasons that this court found wholly inadequate in ignoring Alice Chavez. Placing a primary role. The distinction, counsel, that I think is causing us some problem is that in that case, the police were part of the problem. The evidence was that they were anti-gay and they would harass a gay person coming forward. There's no such evidence in this case. So it all turns, we would have to extend an alias to say that, even if it's unilateral on the part of the attackers who can intimidate somebody to not report and not take advantage of a well-known, highly efficient, let's say that happened in Israel, okay, to say that if the person went to the Israeli Mossad, I doubt most people would say they aren't capable or unwilling, but if they wouldn't go because they knew if they did their family would be beheaded, then it puts a different cast on it, and I think that's what we're trying to work our way through on this case. Your Honor, I would respectfully disagree that this would require an extension of Ornelas Chavez here, because Ornelas Chavez was discussing the futility prong and agreed that that's not concerned here necessarily, but it's the further abuse prong, and there's no requirement that further abuse. See, one possibility is that, and even probability, is that what was meant by have subjected him to further abuse, meaning because of the response of the police, and I mean, for example, in the Moroccan case that you talked about a minute ago, my understanding is that what happened there is that because of the attitudes of the Moroccan police, they would have sent her back to her father, and so she would have been subject to further abuse, but that would have been because of what the police would have done. That's correct, Your Honor, but it would have been further abuse at the hands of the father. But because of police action, not because of police inability to solve the crime immediately. I think we have the point. You've done a good job, both of you, and we appreciate it. Thank you. I appreciate your advocacy. All right, the case argued is submitted.
judges: Tashima, Fisher, Berzon